UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD ZAGARELLA,
　　　Plaintiff,

　　　v.                                    CIVIL ACTION NO.
                                          18-12414-NMG

CALIBER HOME LOANS and
U.S. BANK TRUST NATIONAL ASSOCIATION,
　　　Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANTS CALIBER HOME LOANS'S AND U.S. BANK TRUST NATIONAL**
**ASSOCIATION'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**(DOCKET ENTRY # 17)**

**June 7, 2019**

**BOWLER, U.S.M.J.**

　　　Pending before this court is a motion for judgment on the

pleadings filed by defendants Caliber Home Loans[1] and U.S. Bank

---

[1]  Defendant Caliber Home Loans identifies itself as Caliber Home
Loans, Inc. and points out that the complaint refers to this
entity incorrectly as Caliber Home Loans.  Under Fed. R. Civ. P.
10(a), "The title of the complaint must name all the parties."
A court may nevertheless "identify the proper party to a suit
through analysis and examination of the allegations set forth in
the body of the complaint." Callahan v. Wells Fargo & Co., 747
F. Supp. 2d 247, 251 (D. Mass. 2010).  The body of the complaint
identifies Caliber Home Loans as a corporation and a number of
attached documents refer to this entity as Caliber Home Loans,
Inc. (Docket Entry # 1-1, pp. 10, 50, 52) (Docket Entry # 1-5,
p. 2).  Accordingly, defendant Caliber Home Loans, Inc.
("Caliber") is the intended defendant in the complaint.  See In
re Asacol Antitrust Litig., Civil Action No. 15-12730-DJC, 2016
WL 4083333, at *3 n.1 (D. Mass. July 20, 2016) (because
"complaint makes clear that Warner Chilcott Company LLC is an
intended party, the Court considered it named and analyzed the
motions accordingly").  Likewise, the body of the complaint
repeadedly spells plaintiff's name as Zagarella, as opposed to
the spelling of the name used in the caption, Zagerella.  The

Trust National Association.[2]   (Docket Entry # 17).   Plaintiff
Richard Zagarella ("Zagarella" or "plaintiff") opposes the
motion.   (Docket Entry # 24).   After conducting a hearing on
March 29, 2019, this court took the motion (Docket Entry # 17)
under advisement.

<u>PROCEDURAL BACKGROUND</u>

Zagarella initiated this action by filing a complaint in
Massachusetts Superior Court (Middlesex County) on November 5,
2018.   (Docket Entry # 1-1, p. 10).   On November 19, 2018, this

---

quitclaim deed attached to the complaint also uses the former
spelling.   Accordingly, plaintiff Richard Zagarella is the
intended plaintiff.

[2]   Defendant U.S. Bank Trust National Association identifies
itself as U.S. Bank N.A., as Trustee for LSF9 Master
Participation Trust, and points out that the complaint refers to
this entity incorrectly as U.S. Bank Trust National Association.
This court takes judicial notice that a recorded document
assigning the mortgage at issue in this action identifies U.S.
Bank Trust, National Association as U.S. Bank Trust, N.A., as
Trustee for LSF9 Master Participation Trust.   (Docket Entry # 1-
5); <u>see</u> <u>In re Mitchell</u>, 476 B.R. 33, 38 n.5 (Bankr. D. Mass.
2012) (taking "judicial notice of the assignment of mortgage as
included in the plaintiffs' Exhibit Book, Docket No. 14, p. 14
and filed with the Worcester District Registry of Deeds").   In
opposing the motion, plaintiff Richard Zagarella refers to this
defendant as U.S. Bank Trust, N.A., as Trustee for LSF9 Master
Participation Trust, and otherwise does not object to the
characterization.   (Docket Entry # 24, p. 1).   For purposes of
adjudicating the motion for judgment on the pleadings, he
therefore waives any discrepancy between the foregoing names of
this defendant.   <u>See</u> <u>Vallejo v. Santini-Padilla</u>, 607 F.3d 1, 7 &
n.4 (1st Cir. 2010).   Accordingly, solely for purposes of
deciding the pending motion (Docket Entry # 17), this court
concludes that U.S. Bank Trust, N.A., as Trustee for LSF9 Master
Participation Trust, ("U.S. Bank") is the proper defendant that
plaintiff intended to name in the complaint.

action was removed to the United States District Court in the District of Massachusetts.  (Docket Entry # 1).  The complaint seeks damages against Caliber and U.S. Bank ("defendants") for failing to "perform its [sic] duties in good faith" and for refusing to "assist the Plaintiff so he could consummate the purchase and convey" his property at 67-69 Walnut Street in Malden, Massachusetts ("the property") to a willing buyer to avoid foreclosure.  (Docket Entry # 1-1, pp. 11-14, 18).  The complaint sets out the following claims:  (1) specific performance (Count I);[3] (2) negligence (Count II); and (3) breach of the implied covenant of good faith and fair dealing (Count III).

Defendants seek a dismissal under Fed. R. Civ. P. 12(c) ("Rule 12(c)").  (Docket Entry # 17).  As to the negligence claim, defendants argue that plaintiff cannot prevail because he fails to allege a relationship between himself and defendants that would give rise to a duty and breach of duty.  As to the implied covenant of good faith and fair dealing claim, defendants maintain that the complaint fails to allege a binding contract between plaintiff and defendants.  (Docket Entry ## 18, 28).

STANDARD OF REVIEW

---

[3]  Plaintiff withdrew the claim for specific performance during the March 29, 2019 hearing.

A Rule 12(c) motion for judgment on the pleadings "'is treated much like a Rule 12(b)(6) motion to dismiss.'" Villeneuve v. Avon Prods., Inc., 919 F.3d 40, 43 n.2 (1st Cir. Mar. 19, 2019) (quoting Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)); see Jardín De Las Catalinas Ltd. P'ship v. Joyner, 766 F.3d 127, 132 (1st Cir. 2014) ("applicable standard of review" under Rule 12(c) motion "is identical to the standard of review for motions to dismiss for failure to state a claim under Rule 12(b)(6)").  A judgment on the pleadings is therefore "proper if—after accepting all well-pleaded facts as true and viewing them in the light most favorable to [the plaintiff]—the complaint fails to allege a plausible right to relief."  Villeneuve v. Avon Prods., Inc., 919 F.3d at 49; Doe v. Brown Univ., 896 F.3d 127, 130 (1st Cir. 2018) (court will affirm "'judgment on the pleadings if the complaint fails to state facts sufficient to establish a "claim to relief that is plausible on its face"'") (internal citations omitted).  "'[T]he well-pleaded facts and the reasonable inferences there from'" in the complaint are viewed "'in the light most favorable to the nonmovant (here, the plaintiff).'"  Id. at 130 (internal citation omitted); accord AIG Prop. Cas. Co. v. Cosby, 892 F.3d 25, 27 (1st Cir. 2018) (same).  "[P]laintiff bears the burden of plausibly alleging a viable cause of action."  Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016).  "As with Rule

12(b)(6)," a court considering a Rule 12(c) motion for judgment on the pleadings may consider, in addition to the facts pleaded in the complaint, "'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'"  Lopes v. Riendeau, 177 F. Supp. 3d 634, 665 (D. Mass. 2016) (quoting Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)).

FACTUAL BACKGROUND

In July 2005, Robert and Frances Zagarella, plaintiff's parents, granted a mortgage on the property to secure repayment of a July 2005 promissory note in the amount of $221,784.20.[4] (Docket Entry # 18-1, pp. 2, 12).  The mortgage obligated Robert and Frances Zagarella to pay "all amounts secured by [the] Mortgage." (Docket Entry # 18-1, p. 2).  On August 30, 2016, John Z. Zagarella, "PR. of the Estate of Frances Joanne Zagarella," transferred "all right, title, and interest" in the

---

[4] The complaint refers to the mortgage, which was recorded at the Middlesex County Registry of Deeds (Docket Entry # 18, p. 2) on August 12, 2005.  Accordingly, this court takes judicial notice of the mortgage and considers the mortgage part of the Rule 12(c) record.  See McKenna v. Wells Fargo Bank, N.A., 2011 WL 1100160, at *1 n.6 (D. Mass. Mar. 21, 2011) (taking judicial notice of mortgage "because it is recorded in the Barnstable [County] Registry of Deeds" and considering it in ruling on motion to dismiss); Gargano v. Belmont Police Dep't, 476 F. Supp. 2d 39, 41 (D. Mass. 2007) (considering "official records concerning the driver's licenses issued to the plaintiff by the Massachusetts Registry of Motor Vehicles" in adjudicating motion to dismiss).

property to plaintiff via quitclaim deed. (Docket Entry # 1-1, p. 18). At that time and at all relevant times, the property was mortgaged to U.S. Bank.[5] At all relevant times, Caliber serviced the mortgage loan. (Docket Entry # 1-1, p. 50).

When plaintiff acquired title to the property, the mortgage loan was in default. (Docket Entry # 1-1, p. 11). Plaintiff filed for chapter 13 bankruptcy in June 2017 and voluntarily dismissed the bankruptcy on October 9, 2018. (Docket Entry # 1-1, p. 11); In re Richard Paul Zagarella, 1:17-BK-12538 (Bankr. D. Mass. 2018) (Docket Entry # 152). U.S. Bank scheduled a foreclosure auction to occur on October 25, 2018. Plaintiff learned about the auction on or about October 1, 2018. (Docket Entry # 1-1, p. 11).

On October 6, 2018, plaintiff engaged a realtor as a seller's agent, who on the same day secured an offer to purchase the property for $500,000 from Pedro Maldonado, doing business as Winthrop Property Services, LLC ("Winthrop"). (Docket Entry # 1-1, pp. 24, 34-35). On October 15, 2018, plaintiff and

---

[5] Neither the complaint nor the attached exhibits explicitly state that U.S. Bank holds the mortgage on the property. The assignment of the mortgage to U.S. Bank from the previous holder is recorded at the Middlesex County Registry of Deeds at book 66675, page 373. (Docket Entry # 1-5). For present purposes, the parties do not dispute that U.S. Bank held the mortgage at the relevant time period. Taking judicial notice of this publicly recorded assignment, U.S. Bank is the holder of the mortgage for purposes of the Rule 12(c) motion only.

Winthrop executed a purchase and sale agreement with a closing
date scheduled for October 24. (Docket Entry # 1-1, pp. 12, 39-
44). Winthrop paid deposits of $1,000 and $14,000 for the
property on October 9 and 15, respectively. (Docket Entry # 1-
1, pp. 21-22, 47-48).

On October 11, 2018, having received Winthrop's offer to
purchase the property, plaintiff requested a payoff statement
from Orlans P.C., a law firm representing Caliber. (Docket
Entry # 1-1, p. 12). On October 16, Orlans PC delivered the
payoff statement, which was good through October 19. (Docket
Entry # 1-1, pp. 50-52). On or about October 17, plaintiff
contacted Orlans PC requesting a payoff statement good through
October 24, 2018, the date of the closing scheduled with
Winthrop, which was necessary to complete the sale to Winthrop.
(Docket Entry # 1-1, pp. 12, 56). Orlans PC did not provide an
updated payoff statement and, on October 23, informed plaintiff
that the law firm Doonan, Graves & Longoria, LLC ("DG&L") was
"handling the foreclosure of the [p]roperty." (Docket Entry #
1-1, pp. 12, 54).

Later that day, plaintiff's attorney contacted DG&L via
telephone and email. (Docket Entry # 1-1, pp. 12, 54).
Plaintiff's attorney informed DG&L of the pending sale of the
property and requested that Caliber postpone the foreclosure
auction and provide a payoff statement "good through the end of

7

the month." (Docket Entry # 1-1, pp. 12, 54). The following day, October 24, DG&L responded by informing plaintiff's attorney that "only Caliber can authorize a postponement" of the auction and suggested that plaintiff contact Caliber. (Docket Entry # 1-1, p. 55). DG&L also informed plaintiff's attorney on October 24 that the firm "did mention the payoff [request]" to Caliber and that DG&L could "see that a request [was] opened in the system." (Docket Entry # 1-1, p. 57). That same morning, DG&L contacted Caliber and reported back to plaintiff's attorney that Caliber "would need an executed [purchase and sale agreement] and Proof of Funds to . . . approve any postponement." (Docket Entry # 1-1, p. 59). Plaintiff immediately forwarded DG&L a copy of the purchase and sale agreement and Winthrop's deposit check(s) and asked DG&L to clarify what Caliber meant by "proof of funds." (Docket Entry # 1-1, pp. 60-70). DG&L responded that proof of funds was typically a communication from the bank indicating that the buyer has been approved or pre-approved for a loan, as well as a "current bank statement and a HUD if available." (Docket Entry # 1-1, p. 71). Plaintiff's attorney replied saying that the buyer intended to pay cash, and therefore no lender was involved. (Docket Entry # 1-1, p. 72). DG&L did not offer any further information regarding proof of funds, but informed

plaintiff's attorney that the firm had sent plaintiff's "documentation" to Caliber.  (Docket Entry # 1-1, pp. 12, 74).

Plaintiff's attorney sent several follow-up emails to DG&L throughout the day on October 24, asking if DG&L had received any response from Caliber and if Caliber needed anything else from plaintiff.  (Docket Entry # 1-1, pp. 76, 77).  Plaintiff's attorney "was told there was no response from Caliber about a continuance or a payoff statement."  (Docket Entry # 1-1, p. 12).  At approximately 4:00 p.m. on October 24, DG&L informed plaintiff's attorney that the firm had "followed up again" with Caliber and hoped to hear something "first thing in the morning" on October 25.  (Docket Entry # 1-1, p. 78).  On the morning of October 25, plaintiff's attorney again contacted DG&L asking if the firm had "heard anything back since last night."  (Docket Entry # 1-1, p. 80).  DG&L responded, "I have not.  I just put a call into the client and will let you know."  (Docket Entry # 1-1, p. 81).  Plaintiff received no further communication from DG&L.  (Docket Entry # 1-1, pp. 12-13).  Caliber did not provide a payoff statement or postpone the foreclosure auction.  (Docket Entry # 1-1, pp. 12-13).

The foreclosure auction took place as scheduled on October 25.  (Docket Entry # 1-1, pp. 12-13).  Plaintiff's realtor attended the auction, showed the auctioneer that the property "was under agreement to be sold," and requested "that the

auction not take place." (Docket Entry # 1-1, p. 22). The
realtor's "request was ignored," the auction went forward, and
the property sold for "about $372,000." (Docket Entry # 1-1,
pp. 13, 22).

DISCUSSION

I.  <u>Negligence</u>

       Defendants seek dismissal of the negligence claim on the
basis that the complaint fails to allege the essential elements
of negligence, specifically the elements of duty and breach of
duty. Plaintiff argues that defendants owe him a duty as the
homeowner to act in good faith.

       To prevail on a negligence claim under Massachusetts law, a
plaintiff must prove "'duty, breach, causation, and damages.'"
<u>Potvin v. Speedway LLC</u>, 891 F.3d 410, 414 (1st. Cir. 2018)
(internal citation omitted). Duty exists where "'"the
plaintiff's interests are entitled to legal protection against
the defendant's conduct."'"  <u>Afarian v. Mass. Elec. Co.</u>, 866
N.E.2d 901, 905 (Mass. 2007) (internal citations omitted).
"Although the issues of breach, causation, and damages typically
are determined by a factfinder, . . . the existence vel non of a
legally cognizable duty is typically a question of law . . .."
<u>Potvin v. Speedway LLC</u>, 891 F.3d at 414. Contrary to
defendants' argument, the complaint alleges facts sufficient to
plausibly state that defendants owed him a duty as the holder of

10

the equity of redemption in property mortgaged to them.
Furthermore, plaintiff sufficiently alleges facts to support
that by impeding his efforts to sell the property, they breached
that duty, causing plaintiff injury.

A.   Duty

Defendants argue that because plaintiff "has not alleged
any type of relationship that would create a duty between him
and Defendants," they owe him no duty that would support a
negligence claim.  (Docket Entry # 18, p. 6).  Plaintiff
disagrees and maintains that a mortgagee "executing a power of
sale in a mortgage" has a duty to "exercise good faith and put
forth reasonable due diligence and act as trustee for the
benefit of all persons interested."  (Docket Entry # 24, p. 3).

Massachusetts "subscribes to the title theory of
mortgages," meaning "'a mortgage splits the title [to real
estate] in two parts.'"  In re Mularski, 565 B.R. 203, 206
(Bankr. D. Mass. 2017) (internal citations omitted).  "'[T]he
mortgagee holds legal title to the real property and the
mortgagor retains . . . the equity of redemption accompanied by
a right of possession.'"  In re Crichlow, 322 B.R. 229, 237
(Bankr. D. Mass. 2004) (internal citation omitted).  The equity
or right of redemption is "the right to redeem legal title from
the mortgage holder," by paying off the mortgage, thereby
combining both legal and equitable title in the mortgagor and

11

ending the mortgagee's interest in the real property.  In re
Mularski, 565 B.R. at 206-207 (internal citations omitted); see
also In re Crichlow, 322 B.R. at 237.

Even when a mortgage is in default, the holder of the
equity of redemption may redeem the property "'until the equity
of redemption is foreclosed by the mortgage.'"  In re Crichlow,
322 B.R. at 237 (internal citation omitted).  When a mortgagee
exercises its "power of sale"—the power to sell the mortgaged
property at auction upon the mortgagor's failure to make
payments or to perform other conditions of the mortgage—such a
sale "'foreclose[s] [the] equity of redemption,'" barring
forever "the mortgagor and all persons claiming under him from
all right and interest in the mortgaged premises, whether at law
or in equity."  Mass. Gen. Laws ch. 183, §§ 20, 21; Butler v.
Deutsche Bank Trust Co. Americas, Civil Action No. 12-10337-DPW,
2012 WL 3518560, at *6 (D. Mass. Aug. 14, 2012) (internal
citation omitted); see Housman v. LBM Fin., LLC., 952 N.E.2d
418, 424-25 (Mass. App. Ct. 2011).  Under a Massachusetts
statute, mortgaged property may be redeemed up until the time it
has been "sold pursuant to a power of sale contained in the
mortgage deed."  Mass. Gen. Laws ch. 244, § 18.

Although the original mortgagor of property most often
retains the equity of redemption, the equity is "'a distinct
estate . . . [that] is descendible, devisable, and alienable

like other interests in real property.'"   In re Sunshine Three
Real Estate Corp., No. 09-17821-JNF, 2009 WL 3617798, at *10
(Bankr. D. Mass. Oct. 26, 2009) (quoting Clark v. Reyburn, 75
U.S. 318, 321-22 (1868)); see also Mass. Gen. Laws ch. 244, § 33
("heirs, devisees, executor, or administrator" of decedent
"entitled to redeem a mortgaged estate").   In Massachusetts, the
equity of redemption, like other interests in real property,
passes directly to a decedent's heirs or devisees upon the
holder's death.   See Farber v. Sherman, No. 16-ADMS-40003, 2016
WL 4079740, at *3 (Mass. App. Ct. July 27, 2016) (citing Daley
v. Daley, 14 N.E.2d 113, 116 (Mass. 1938)); McCarthy v. Landry,
678 N.E.2d 172, 174 (Mass. App. Ct. 1997) (citing Shrewsbury v.
Murphy, 130 N.E.2d 559, 560 (Mass. 1955)).   Because a decedent's
interests in real property automatically vest in the heirs or
devisees, an administrator of a decedent's estate is normally
"'legally a stranger'" to those interests, but in some
situations, an administrator or other personal representative
may gain authority to sell a decedent's interest in real estate.
McCarthy v. Landry, 678 N.E.2d 172, 174 (Mass. App. Ct. 1997)
(internal citation omitted); see Mass. Gen. Laws ch. 190B, § 3-
715(23½); Mass. Gen. Laws. ch. 202, §§ 1, 6, 18-19.

     The equity of redemption is not only descendible and
devisable; it is also "an interest in real property that may be
assigned, [and] conveyed by deed."   In re Mularski, 565 B.R. at

207 (internal citations omitted).  Conveying the title to a
mortgaged parcel of real property conveys the equity of
redemption.  See id. at 207 (purchaser of mortgaged land could
acquire, at most, mortgagor's equity of redemption); Marshall v.
Francis, 124 N.E.2d 803, 804 (Mass. 1955) (transfer of real
property by deed transfers equity of redemption); Taylor v.
Weingartner, 111 N.E. 909, 910-911 (Mass. 1916) (person to whom
mortgaged premises were sold owned equity of redemption); see
also Homer v. Town of Yarmouth, 662 N.E.2d 1056, 1057 (Mass.
App. Ct. 1996) (conveying title to land subject to tax lien
conveyed right of redemption); Howard J. Alperin, Summary of
Basic Law § 14:16 (5th ed. 2018).  Therefore, "[i]t is settled
that a debtor under an express mortgage can convey his equity of
redemption by a quitclaim deed."  Fales v. Glass, 402 N.E.2d
1100, 1103 (Mass. App. Ct. 1980) (citing Perry v. Hayward, 66
Mass. 344, 348-49 (1853)).

A person may also acquire the equity of redemption in
mortgaged real estate without assuming the mortgage.  In
Massachusetts, there is a "familiar rule that where land is
conveyed subject to a mortgage, the grantee does not, by
acceptance of the deed alone, undertake to be bound by or to pay
the mortgage debt."  Consumers Savings Bank v. Coven, 395 N.E.2d
1331, 1333 (Mass. App. Ct. 1979).  Rather, the grantor "merely
convey[s] . . . [the] equity of redemption."  Post v. McHugh,

No. 236372 (LJL), 2008 WL 921154, at *5 n.16 (Mass. Land Ct. Apr. 7, 2008); see also Debral Realty, Inc. v. Marlborough Coop. Bank, 717 N.E.2d 1023, 1028 n.7 (Mass. App. Ct. 1999); 13 Williston on Contracts § 37:43 (4th ed. 2018).

On August 30, 2016, John Z. Zagarella, personal representative of the estate of plaintiff's mother, Frances Zagarella, conveyed the property to plaintiff via quitclaim deed.[6] (Docket Entry # 1-1, pp. 11, 18). The complaint does not elaborate the basis of John Z. Zagarella's authority to convey the decedent's interest in real estate, whether as title holder to the property as Frances Zagarella's heir or devisee, or as her personal representative. Massachusetts law, however, recognizes bases for such authority on either ground, and for present purposes the parties do not dispute the validity of the deed or that plaintiff ultimately acquired his mother's interest in the property. Therefore at this juncture, based on the Rule 12(c) record, by virtue of the quitclaim deed transferring "all right, title, and interest held by the Grantor," plaintiff holds the equity of redemption in the property. (Docket Entry # 1-1, p. 18).

---

[6] The term "'Personal representative,' includes executor[s], administrator[s], successor personal representative[s], special administrator[s], special personal representative[s], and persons who perform substantially the same function under the law." Mass. Gen. Laws ch. 190B, § 1-201(37).

Ordinarily, "'"the mere relationship between mortgage holder or servicer and borrower does not give rise to a fiduciary duty to the latter."'"  HMC Assets, LLC v. Conley, Civil Action No. 14-10321-MBB, 2016 WL 4443152, at *29 (D. Mass. 2016) (internal citations omitted); accord MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013).  However, there is an exception to the no-duty rule that "applies inasmuch as 'a mortgagee does owe a fiduciary duty to a mortgagor "to refrain from committing fraud, bad faith or failing to use reasonable diligence in the context of a foreclosure sale."'"  HMC Assets, LLC v. Conley, 2016 WL 4443152, at *29 (internal citations omitted).  It is a foreclosing mortgagee's "'duty at common law to protect the interests of the mortgagor in exercising a power of sale in a mortgage.'"  MacKenzie v. Flagstar Bank, FSB, 738 F.3d at 493 (internal citations omitted).

"Massachusetts courts have consistently held" that a mortgagee[7] exercising the power of sale must not only "act in good faith and . . . use reasonable diligence to protect the interests of the mortgagor," but also must "act as a 'trustee for the benefit of all persons interested.'"  In re Cruz, 446

---

[7]  In the statutory scheme governing mortgage foreclosures, the term "'mortgagee'" refers the holder of the mortgage and mortgage note and those "acting on behalf of the note holder." Eaton v. Fed. Nat'l Mortg. Assoc., 969 N.E.2d 1118, 1121 (Mass. 2012).

B.R. 1, 4 (Bankr. D. Mass. 2011) (internal citations omitted);

In re Ruebeck, 55 B.R. 163, 169 (Bankr. D. Mass. 1985).[8] "[A]ll

persons interested" includes persons other than mortgagors,

including "those holding junior encumbrances or liens," and the

holder of the equity of redemption.  In re Ruebeck, 55 B.R. at

169; accord Seppala & Aho Constr. Co., Inc. v. Petersen, 367

N.E.2d 613, 616 (Mass. 1977); Sandler v. Silk, 198 N.E. 749, 751

(Mass. 1935) (duty "extends for the benefit . . . not only of

the mortgagor but of those claiming in his right"); Krassin v.

Moskowitz, 175 N.E. 269, 269 (Mass. 1931) ("elementary" that

foreclosing mortgagee must "protect the interests of the

mortgagor or of the one holding the title to the equity of

redemption"); see also Mass. Gen. Laws ch. 244, § 14 (requiring

mortgagee to notify owner of equity of redemption prior to

foreclosure sale); In re Guilford, 52 B.R. 177, 180 (Bankr. D.

Mass. 1985) (mortgagee's failure to notify interested buyer of

foreclosure sale showed lack of due diligence).

Moreover, courts have distinguished a foreclosing

mortgagee's duty to act in good faith and use reasonable

diligence from the implied covenant of good faith and fair

dealing.  See MacKenzie v. Flagstar Bank, FSB, 738 F.3d at 493

---

[8]  The First Circuit in Resolution Trust Corp. v. Carr, 13 F.3d
425, 431 (1st Cir. 1993), declined to follow the Ruebeck
decision on other, unrelated grounds.

n.4.  Whereas the latter arises out of a contractual
relationship between the parties, the former does not.  See id.
("[t]he two doctrines are distinct and have separate
underpinnings").  Defendants correctly argue that the complaint
does not allege that plaintiff assumed the mortgage on the
property or otherwise entered into a contractual relationship
with them, and that they therefore cannot owe him a duty on that
basis.  However, they mischaracterize the duty to act in good
faith and use reasonable diligence as a duty arising out of a
contractual relationship (Docket Entry # 28, p. 2) and fail to
address their duty to plaintiff as the holder of the equity of
redemption.  The complaint sufficiently alleges facts to support
defendants' duty to plaintiff on that basis.

Defendants also rely on In re Patchell to argue that,
because plaintiff is not a party to the mortgage agreement, they
owe him no duty.  Defendants point out that "[t]he *Patchell*
Court reasoned that a potential mortgagor was not conferred the
same duty as that owed to a mortgagor because there was no
existing relationship with the mortgagee." (Docket Entry # 28,
p. 2).  The plaintiff in Patchell relied on Snowden, discussed
*infra*, to argue that, prior to the execution of the mortgage
agreement, the defendant mortgagee had a duty to inform her of a
neighboring structure that encroached on the property to be
mortgaged.  In re Patchell, 336 B.R. 1, 11 (Bankr. D. Mass.

18

2005).  She claimed the defendants owed her a duty, not as holder of an equity of redemption in property subject to an existing mortgage held by the defendants, but as the future mortgagor in an anticipated mortgage contract not yet in existence.  Id.  Defendants' argument fails to recognize this distinction.  It is true that, like the plaintiff in Patchell, plaintiff here has no *contractual* relationship with defendants. Unlike the Patchell plaintiff, however, he has a relationship with defendants as the owner of an interest in real property mortgaged to them.  In short, defendants' argument ignores the duty that foreclosing mortgagees owe to interested parties, specifically the holder of the equity of redemption in mortgaged real estate.

B.  Breach

Whether a foreclosing mortgagee breaches its duty of good faith and reasonable diligence to those who hold an interest in the mortgaged property is not simply a question of whether the mortgagee complies with statutory foreclosure requirements.  In re Cruz, 446 B.R. at *4.  It is, as questions of breach of duty normally are, a "'question[] of fact' for the factfinder to evaluate."  Crooker v. United States, Civil Action No. 13-30199, 2015 WL 430289, at *5 (D. Mass. Feb. 3, 2015) (internal citation omitted).  In Snowden, "the court held that a lender breached this duty by foreclosing a mortgage the day after receiving

notice that the borrower had negotiated an agreement to sell the property at a price beneficial to the lender." In re Cruz, 446 B.R. at 4 (citing Snowden, 2003 WL 22519518).

Similar to plaintiff here, the Snowden plaintiffs, upon receiving notice of the mortgagee's intention to foreclose and sell their property at auction, immediately engaged a realtor, located a willing buyer, and, on the day before the scheduled foreclosure auction, provided the mortgagee with copies of the buyer's offer to purchase and proof that he was able to make the purchase.[9] Snowden, 2003 WL 22519518, at *1. The plaintiffs asked the mortgagee to postpone the auction, but the mortgagee refused, going forward with the sale as scheduled and selling the property for a lesser amount than that offered by the plaintiffs' buyer. Id. at *1-2.

The Snowden court held that, despite the fact that the plaintiffs brought the prospective buyer to the mortgagee's attention at the "very last moment," the mortgagee, in refusing to "postpone the auction to permit further inquiry into the viability of the prospective buyer," breached its duty to "'exercise the utmost good faith'" and "use reasonable diligence" to protect the plaintiffs. Id. at *3-5 (internal

---

[9] Drawing reasonable inferences in plaintiff's favor from the Rule 12(c) record, there is sufficient support to show that, like the Snowden plaintiff, there was adequate proof of the cash buyer's ability to purchase the property for $500,000.

citations omitted).  The court also found that the mortgagee's undisputed assertion that it had complied with the statutory and contractual requirements of the foreclosure sale was unavailing. Id. at *4.  The court held that to find such compliance sufficient to fulfill the mortgagee's duty would "elevate compliance with the formalities required to exercise the contractual power of sale . . . over the fiduciary obligation it owed to the mortgagee [sic] and the dictates of basic fairness." Id.

The United States District Court for the District of Massachusetts in Sunnigdale Ventures acknowledges that "in the most favorable conditions—where a buyer ha[s] legally bound himself to purchase the property, not contingent on securing financing, and [will] pay a price sufficient to give the mortgagee full recovery," Snowden may imply that a "mortgagee's failure to take the higher offer or at least put off the sale might constitute bad faith." Sunningdale Ventures, Inc. v. Martin, Civil Action No. 13-12512-DPW, 2018 WL 1582554, at *6 (D. Mass. Mar. 31, 2018).  Snowden also "stands . . . for the proposition that once foreclosure has commenced, the mortgagee must consider any buyers that the mortgagor brings to its attention." Figueroa v. Fed. Nat'l Mortg. Ass'n, Civil Action No. 12-11290-RWZ, 2013 WL 2244348, at *3 (D. Mass. May 20, 2013).

The complaint alleges conduct by defendants that is similar
to the conduct of the mortgagee in Snowden, which is sufficient
to support a plausible finding that defendants breached the duty
to act in good faith and use reasonable diligence when
conducting the foreclosure sale.  Although defendants argue, and
plaintiff does not dispute, that defendants complied with the
statutory requirements for foreclosure (Docket Entry # 28, p.
5), defendant's duty does not end there.  The complaint alleges
that, as in Snowden, plaintiff secured a willing buyer who would
purchase the property for a price beneficial to the lender.
(Docket Entry # 1-1, p. 11).  It further alleges that
plaintiff's attorney provided Caliber with proof of the purchase
and sale agreement and Winthrop's deposit checks, informed
Caliber that Winthrop intended to pay cash for the property, and
requested that Caliber provide a payoff statement or postpone
the auction.  (Docket Entry # 1-1, pp. 57, 59, 74).  Although
Caliber apparently engaged in some communication with plaintiff
regarding the requirements for a postponement, the complaint
alleges that it ultimately ceased to respond to plaintiff's
communications, failed to provide the payoff statement, and
carried on with the foreclosure auction on the scheduled date,
despite additional efforts on the day of sale by plaintiff's
realtor to inform the auctioneer of Winthrop's offer to purchase
the property.  (Docket Entry # 1-1, pp. 12–14, 22, 59, 71, 81).

The auction resulted in a sale of the property to another buyer for $128,000 less than the price Winthrop had promised, frustrating plaintiff's efforts to "consummate the purchase and convey the . . . property to Winthrop."[10]   (Docket Entry # 1-1, p. 14).

Given the similarity to the facts in Snowden and the court's decision in that case as well as the decisions in this district citing Snowden as indicating that mortgagees may breach the duty to exercise good faith and reasonable diligence when they fail to postpone foreclosure or take the higher offer when faced with similar circumstances, the complaint alleges a plausible basis that defendants breached this duty.

Defendants cite BFP v. Resolution Tr. Corp. and Pemstein v. Stimpson for the proposition that when statutory foreclosure

---

[10]  Both Caliber and U.S. Bank can be held liable for Caliber's conduct.  "Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 187 (1st Cir. 2006); see also Kenney v. U.S. Bank, N.A., Civil Action No. 17-11427-FDS, 2017 WL 5196386, at *5-6 (representations made by mortgagee's loan servicer treated as representations made by mortgagee).  "[I]n transactions with third parties, an agent's conduct will be imputed to the principal . . . [I]f an agent negligently injures a third party while acting within the scope of the agency, the principal will be held vicariously liable for that negligence." Merrimack Coll. v. KPMG LLP, 108 N.E.3d 430, 437 (Mass. 2018).  Agents are also liable for their own tortious conduct.  Skowronski v. Sachs, 818 N.E.2d 635, (Mass. App. Ct. 2004) (agent liable in tort for tortious conduct committed while acting as agent); see also Restatement Third of Agency § 7.01 (Am. Law. Inst. 2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct").

procedures have been followed, "mere inadequacy of the foreclosure sale price is no basis for setting the sale aside." BFP v. Resolution Tr. Corp., 511 U.S. 531, 542 (1994); Pemstein v. Stimpson, 630 N.E.2d 608, 611 (Mass. App. Ct. 1994). Although a foreclosing mortgagee has a duty "to obtain for the property 'as large a price as possible,'" defendants accurately state that a "low price is not, by itself, indicative of a breach of duty by the mortgagee." RFF Family P'ship, LP v. Link Dev., LLC, 932 F. Supp. 2d 213, 226 (D. Mass. 2013).[11]

However, the Pemstein court stated that foreclosing mortgagees who adhere to statutory norms satisfy their "fiduciary duty . . . to deal fairly with the mortgaged property, *unless* the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure

---

[11]  Case law is not entirely consistent about whether the duty to obtain as large a price as possible adheres when the foreclosing mortgagee is not also the purchaser of the property.  See RFF Family P'ship, LP v. Link Dev., LLC, 932 F. Supp. 2d at 226 ("'more exacting'" duty of mortgagee who "'becomes the buyer of the property'" requires mortgagee to obtain "'as large a price as possible'") (internal citation omitted); Citadel Realty, LLC v. Endeavor Capital North, LLC, 98 N.E.3d 206, 212-13 (Mass. App. Ct. 2018) (duty exists where "party . . . intrusted with a power to sell" becomes purchaser); Ryan v. MEZ, LLC, No. 06-0463-B, 2008 WL 2415177, at *2 (Mass. Super. Ct. June 9, 2008) (mortgagee's duty "more exacting when it becomes the buyer of the property").  But see Milton Savings Bank v. United States, 187 N.E.2d 379, 382-83 (Mass. 1963) (discussing duty to obtain as large a price as possible in sale where mortgagee was not purchaser); In re Edry, 201 B.R. 604, 606 (Bankr. D. Mass. 1996) (same).

sale process." Pemstein v. Stimpson, 630 N.E.2d at 611
(emphasis added).  Therefore, while it is correct that "[a] low
price . . . does not by itself indicate bad faith or lack of
diligence in disposition of mortgaged real estate," id., the
complaint alleges not merely a low sale price for the property
at auction, but conduct by defendants that frustrated
plaintiff's efforts to obtain a higher price.  As discussed
supra, these and other allegations suffice to state a plausible
claim for beach of the duty to exercise good faith and
reasonable diligence.

II.  Breach of Implied Covenant of Good Faith and Fair Dealing

On the basis that the complaint "has not alleged facts
demonstrating that a contract existed" between themselves and
plaintiff, defendants seek judgment in their favor on the breach
of the implied covenant of good faith and fair dealing claim.
(Docket Entry # 18, p. 7).  Here, in contrast to the negligence
claim, defendants are correct.

"In order to show breach of the covenant, the plaintiff
must show that there existed an enforceable contract between the
two parties . . .." Laser Labs, Inc. v. ETL Testing Labs.,
Inc., 29 F. Supp. 2d 21, 24 (D. Mass. 1998).  "The concept of
good faith and fair dealing . . . is shaped by the nature of the
contractual relationship from which the implied covenant
derives.  The scope of the covenant is only as broad as the

contract that governs the particular relationship." Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005). The covenant "concerns the manner of performance" of a contract; it "may not be 'invoked to create rights and duties not otherwise provided for in [an] existing contractual relationship.'" Id. (internal citation omitted). Because the complaint does not allege facts sufficient to support the existence of an enforceable contract between plaintiff and defendants, it does not set out a plausible claim for breach of the implied covenant of good faith and fair dealing.

The complaint asserts that plaintiff and defendants "entered into a Contract per the mortgage," but fails to allege facts sufficient to support this bare assertion. (Docket Entry # 1-1, p. 14). An individual such as plaintiff who acquires title to mortgaged property does not necessarily assume the mortgage or enter into a contractual relationship with the mortgagee. Consumers Sav. Bank v. Coven, 395 N.E.2d at 1333-34. It is a "familiar rule" that "where land is conveyed subject to a mortgage, the grantee does not, by acceptance of the deed alone, undertake to be bound by or to pay the mortgage debt." Id. at 1333. One who acquires title to mortgaged real estate "'"subject to" a mortgage is simply acquiring an equity of redemption and is not thereby personally obligated on any indebtedness secured by the mortgage.'" Brandt v. Broderick,

26

No. 04-P-353, 2005 WL 549497, at *2 (Mass. App. Ct. Mar. 9, 2005) (internal citation omitted).  By contrast, "[a] buyer agreeing to 'assume' a mortgage becomes personally obligated." Riedle v. Peterson, 560 N.E.2d 725, 727 (Mass. App. Ct. 1990); see also Brandt v. Broderick, 2005 WL 549497, at *2; 13 Williston on Contracts § 37:43 (4th ed. 2018).  "There must be words importing that the grantee will pay the debt to make him personally liable . . . an obligation by a grantee to assume and agree to pay a mortgage debt is not lightly to be implied where the deed contains no such recitation." Consumers Savings Bank v. Coven, 395 N.E.2d at 1333; see also Debral Realty, Inc. v. Marlborough Coop. Bank, 717 N.E.2d at 1028 n.7 (citing Fiske v. Tolman, 124 Mass. at 256); see also F.T. Talty, P. Sullivan, & A.L. Braunstein, Methods of Practice § 13.10 (4th ed. 2018).

Plaintiff's parents, Robert L. Zagarella and Frances J. Zagarella, not plaintiff, executed the mortgage on the property, and the complaint does not allege that plaintiff assumed the mortgage at any point.  The deed conveying title to the property to plaintiff makes no reference to the mortgage, and the complaint alleges no other facts supporting a contractual agreement between plaintiff and defendants.  (Docket Entry # 1-1, p. 18).  Therefore, the complaint fails to allege facts sufficient to support a plausible claim of breach of the implied covenant of good faith and fair dealing.

Plaintiff nevertheless relies on <u>Snowden</u>, discussed in part I, to argue that defendants breached the covenant of good faith and fair dealing.  (Docket Entry # 24, pp. 4-5).  In doing so, he conflates the covenant of good faith and fair dealing and a foreclosing mortgagee's duty act in good faith and use reasonable diligence, the issue addressed in <u>Snowden</u>.  This is an error that the court in <u>MacKenzie</u> explicitly warned against. <u>MacKenzie v. Flagstar Bank, FSB</u>, 738 F.3d at 493 n.4.  There, the court reiterated the contractual "underpinnings" of the covenant of good faith and fair dealing and "wish[ed] to make clear" that litigants should "acknowledge the distinct nature of each doctrine and present their arguments accordingly."  <u>Id.</u> Plaintiff fails to do this and the complaint neglects to sufficiently allege the necessary contractual relationship of the claim of breach of the covenant of good faith and fair dealing.

CONCLUSION

In accordance with the foregoing, this court **RECOMMENDS**[12] that the motion for judgment on the pleadings (Docket Entry #

---

[12]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection should be included.  <u>See</u> Fed. R. Civ. P. 72(b); Rule 3, Rules for U.S. Magistrate Judges in U.S. District Court for the District of Massachusetts.  The written objections must specifically identify the portion of the Report and Recommendation to which objection is made.  Any party may

17) be **ALLOWED** as to the breach of the implied covenant of good faith and fair dealing claim (Count III), **DENIED** as to the negligence claim (Count II), and **MOOT** as to the specific performance claim (Count I).[13]

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

respond to another party's objections within 14 days after being served with a copy of the objections.  Failure to file objections within the specified time waives the right to appeal the order.
[13]  See footnote three.